Paul G. Karlsgodt (admitted *pro hac vice*)
Sarah A. Ballard (admitted *pro hac vice*)
Keeley O. Cronin (admitted *pro hac vice*)
**BAKER & HOSTETLER LLP**
1801 California Street, Suite 4400
Denver, CO 80202
Phone: 303.861.0600
Fax: 303.861.7805
pkarlsgodt@bakerlaw.com
sballard@bakerlaw.com
kcronin@bakerlaw.com

Michelle M. Buckley (AZ #030617)
**POLSINELLI PC**
One E. Washington St., Ste. 1200
Phoenix, AZ 85004
Phone: 602.650.2000
Fax: 602.264.7033
mmbuckley@polsinelli.com

*Attorneys for Defendant Yuma Regional Medical Center*

**BAKER & HOSTETLER LLP**
**ATTORNEYS AT LAW**
**DENVER**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dillan Clarke, Elayne Martinez, Brittney Johnson, Brian Kircher, Juanita Sarabia, Megan Kircher, Donald Banti and Marcia Banti, Ryan Mangum and Tiffany Mangum, Anthony Spano, Carol Ashby, Margaret O'Grady, Mayra Esquivel and her minor son, E. N., on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>Yuma Regional Medical Center,<br><br>        Defendant. | Case No. CV-22-01061-PHX-SMB<br><br>**MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT; MEMORANDUM IN SUPPORT OF MOTION**<br><br>**(ORAL ARGUMENT REQUESTED)** |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................... 1

II.   PLAINTIFFS' ALLEGATIONS ............................................................ 2

III.  MOTION TO DISMISS STANDARD .................................................. 3

IV.  ARGUMENT ......................................................................................... 4

    A.    Plaintiffs Fail to Plausibly Allege the Existence of Damages, a Required Element of Each of Their Claims. ................................. 4

          1.    Plaintiffs' "general damages" allegations fail. ................... 5

          2.    Plaintiffs' "specific damages" allegations fail. ................ 10

    B.    Plaintiffs' Negligence Claim Should Also Be Dismissed For Failure to Plead Breach of Duty or Causation. ............................ 11

    C.    Plaintiffs' Negligence *Per Se* Claim Fails. ................................. 13

    D.    Plaintiffs' Breach of Implied Contract Claim Fails. ................... 13

          1.    Plaintiffs fail to plead the terms of an implied contract. ................ 13

          2.    Plaintiffs also fail to plead consideration. ....................... 14

    E.    Plaintiffs' Unjust Enrichment Claim Should Be Dismissed. ..................... 15

    F.    Plaintiffs' ACFA Claim Should Be Dismissed. ........................... 16

          1.    Plaintiffs' ACFA allegations do not satisfy Rule 9(b). ................... 16

          2.    Plaintiffs cannot allege actual reliance on any alleged omission to state their ACFA claim. ................................. 17

V.    CONCLUSION ................................................................................... 17

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amari v. Scottsdale Healthcare Hosps.*,
  No. 1 CA-CV 17-0443, 2018 WL 2928040 (Ariz. Ct. App. June 12,
  2018) ................................................................................................................. 8

*Antman v. Uber Techs, Inc.*,
  Case No. 15-cv-01175-LB, 2018 WL 2151231 (N.D. Cal. May 10,
  2018) ................................................................................................................. 12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .......................................................................................... 3

*In re Banner Health Data Breach Litig.*,
  No. CV-16-02696-PHX-SRB, 2017 WL 6763548 (D. Ariz. Dec. 20,
  2017) ................................................................................................................. 15

*Bass v. Facebook, Inc.*,
  394 F. Supp. 3d 1024 (N.D. Cal. 2019) ................................................. 2, 8, 11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .......................................................................................... 3

*Burger v. Healthcare Mgmt. Solutions, LLC*,
  Civil Action No. RDB-23-1215, 2024 WL 473735 (D. Md. Feb. 7,
  2024) ........................................................................................................... 5, 12

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) .......................................................................................... 4

*In re Cmty. Health Sys., Inc.*,
  No. 15-CV-222-KOB, 2016 WL 4732630 (N.D. Ala. Sept. 12, 2016) ...................... 12

*Durgan v. U-Haul Int'l Inc.*,
  No. CV-22-01565-PHX-MTL, 2023 WL 7114622 (D. Ariz. Oct. 27,
  2023) ................................................................................................... 4, 6, 13, 14

*Feins v. Goldwater Bank NA*,
  No. CV-22-00932-PHX-JJT, 2022 WL 17552440 (D. Ariz. Dec. 9,
  2022) ........................................................................................................... 4, 11

*Gannon v. Truly Nolen of Am. Inc.*,
No. CV 22-428-TUC-JAS, 2023 WL 6536477 (D. Ariz. Aug. 31, 2023) ........... *passim*

*Griffey v. Magellan Health Inc.*,
562 F. Supp. 3d 34 (D. Ariz. Sept. 27, 2021) ........................................................ *passim*

*Griffey v. Magellan Health Inc.*,
No. CV-20-01282-PHX-MTL, 2022 WL 1811165 (D. Ariz. June 2,
2022) ................................................................................................................ *passim*

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) ..................................................... 10, 12

*Jackson v. Loews Hotels, Inc.*,
Case No. ED CV 18-827-DMG, 2019 WL 6721637 (C.D. Cal. July 24,
2019) .................................................................................................................. 8

*Krottner v. Starbucks Corp.*,
406 F. App'x 129 (9th Cir. 2010) ........................................................................ 4

*Lorona v. Ariz. Summit Law Sch.*,
188 F. Supp. 3d 927 (D. Ariz. 2016) ................................................................. 16

*In re MCG Health Data Sec. Issue Litig.*,
CASE NO. 2:22-CV-849-RSM-DWC, 2023 WL 3057428 (W.D. Wash.
Mar. 27, 2023) ............................................................................................... 9, 10

*Naiman v. Alle Processing Corp.*,
No. CV20-0963-PHX-DGC, 2020 WL 6869412 (D. Ariz. Nov. 23,
2020) ................................................................................................................ 17

*Petta v. Christie Bus. Holding Co., P.C.*,
230 N.E.3d 162 (Ill. App. Ct. 2023) ................................................................... 5

*Pruchnicki v. Envision Healthcare Corp.*,
439 F. Supp. 3d 1226 (D. Nev. 2020) .................................................................. 7

*Pruchnicki v. Envision Healthcare Corp.*,
845 F. App'x 613 (9th Cir. 2021) ........................................................................ 4

*Quinalty v. FocusIT LLC*,
No. CV-23-00207-PHX-JJT, 2024 WL 342454 (D. Ariz. Jan. 30, 2024)........... *passim*

*Resnick v. AvMed, Inc.*,
693 F.3d 1317 (11th Cir. 2012) ........................................................................ 13

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

*Rodriguez v. Fox News Network, L.L.C.*,
  356 P.3d 322 (Ariz. Ct. App. 2015).....................................................................8

*Stollenwerk v. Tri-W. Health Care All.*,
  254 F. App'x. 664 (9th Cir. 2007) .....................................................................12

*Travis v. Assured Imaging LLC*,
  No. CV-20-00390-TUC-JCH, 2021 WL 1862446 (D. Ariz. May 10,
  2021) ...........................................................................................................6, 7, 8

*Troy v. Am. Bar Ass'n*,
  23-CV-03053 (NGG) (VMS), 2024 WL 1886753 (E.D.N.Y. Apr. 30,
  2024) ...................................................................................................................5

**Rules**

Fed. R. Civ. P. 9(b)....................................................................................2, 16, 17

Fed. R. Civ. P. 12(b)(6) .........................................................................1, 4, 5, 10

**Other Authorities**

Claudia Dimuro, *61% of Americans Have Had Their Personal Data
  Breached*, Governing (Feb. 8, 2024),
  https://www.governing.com/management-and-administration/61-of-
  americans-have-had-their-personal-data-
  breached#:~:text=61%25%20of%20Americans%20Have%20Had%20T
  heir%20Personal%20Data%20Breached (last visited May 27, 2024) .........................5

Notice of Privacy Practices, YRMC, chrome-
  extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.yumaregio
  nal.org/wp-content/uploads/2023/12/NoticePrivacyPracticesEnglish-
  Mobile-App-Language-Added-122823-FINAL.pdf.....................................15

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Yuma Regional Medical Center ("Defendant" or "YRMC") moves to dismiss the Consolidated Class Action Complaint ("Complaint" or "CC") for failure to state a claim upon which relief can be granted.  Under LRCiv 12.1(c), YRMC certifies that its undersigned counsel notified Plaintiffs' counsel of this Motion, but the parties were unable to agree that the pleading could be cured by amendment to address the issues raised herein.

## I.    **INTRODUCTION**

Fifteen named Plaintiffs, all current or former patients of YRMC, filed this action after being notified of a ransomware attack that may have resulted in unauthorized individual(s) accessing the network of YRMC, a non-profit health care provider in Yuma, Arizona.  Plaintiffs' Complaint should be dismissed for the reasons below.

Plaintiffs do not allege cognizable injuries sufficient to state any of their claims.  Though Plaintiffs describe a variety of "general" and "specific" theories of injury, the non-conclusory facts pled in support of these theories do not support the required elements of injury or damages required for any of their claims for relief.  Plaintiffs also fail to allege facts that would plausibly establish that their injures were proximately caused by the ransomware attack alleged in their Complaint.

Each of Plaintiffs' causes of action also fails for independent reasons.  Plaintiffs' negligence *per se* claim should be dismissed because it is not a freestanding cause of action or is premised on statutes that do not provide for a private right of action.  Plaintiffs' claim for breach of implied contract fails because Plaintiffs have not alleged facts necessary to establish an agreement on the scope of, and parameters for, any obligation to protect Plaintiffs' personal information beyond what YRMC was required to do by law.  And Plaintiffs' unjust enrichment claim fails because they do not allege what, if anything, they paid YRMC directly or how they were "impoverished" as a result.

Plaintiffs' claim for violation of the ACFA should also be dismissed for failure to plead facts sufficient to satisfy elements beyond causation and injury.  Plaintiffs do not plead which *specific* omission they believe to be false or which YRMC concealed, nor do

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

they plead the ACFA claim with requisite particularity under Federal Rule of Civil Procedure 9(b). Their ACFA claim should also be dismissed for failure to allege actual reliance on any purported misrepresentation or omission. Ultimately, Plaintiffs have not asserted—because they cannot—a single claim upon which relief can be granted. YRMC respectfully requests that Plaintiffs' Complaint be dismissed in its entirety.

## II. PLAINTIFFS' ALLEGATIONS

Plaintiffs filed this action on behalf of themselves, as current or former patients of YRMC, and on behalf of a putative class, including current and former patients of YRMC, that may have been impacted by the ransomware attack that YRMC discovered on or about April 25, 2022. [*See generally* Dkt. No. 68 (CC).] Specifically, Plaintiffs allege that YRMC determined that "cybercriminals" gained access to YRMC's "files and systems from April 21, 2022 and April 25, 2022," resulting in the potential access to approximately 700,000 patients' "personal health information ('PHI' or 'Private Information'), including names, Social Security numbers ('SSNs'), health insurance information, and medical information relating to care received at [YRMC]" ("Data Incident"). [*Id.* at ¶¶ 1 & 2 (citation omitted); 30, 37, 38, 40.] All Plaintiffs, except Esquivel's minor son, E.N.,[1] claim that they were notified by YRMC that their Private Information was impacted in the Data Incident and that, after the Data Incident, YRMC offered them "free credit monitoring and identity theft protection services" for an unstated duration. [*Id.* at ¶¶ 7, 12–23, 45.] Only O'Grady alleges that the notice she received stated specifically that her "[SSN], health insurance information, and other sensitive medical information" had been potentially impacted in the Data Incident. [*Compare, e.g.*, *id.* at ¶ 188 *with* ¶¶ 52, 65, 79, 95, 107, 120, 132, 145, 160, 174, 199.] Plaintiffs further allege that YRMC failed to protect their personal information and timely notify them that their personal information had potentially

---

[1] Plaintiffs assert only that E.N.'s information was allegedly contained in the "compromised files" on YRMC's network. [CC, ¶¶ 23, 198.] Because E.N. has failed allege that he was even notified of the Data Incident, his claims should be dismissed in their entirety. *See Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1036 (N.D. Cal. 2019) (dismissing plaintiff for lack of standing where plaintiff failed to allege he had been notified of a data incident, concluding plaintiffs "cannot merely assume [they are] a victim through facts that do not trace to the data breach").

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

been compromised. [*Id.* at ¶¶ 2–4.] As a result, Plaintiffs now assert claims for (1) negligence; (2) negligence *per se*; (3) breach of implied contract; (4) unjust enrichment; and (5) violation of the ACFA. [*See generally id.*]

Since the Data Incident, Plaintiffs allege they have experienced a variety of harms. Specifically, Plaintiffs allege they experienced the following "general damages": (1) diminution in the value of personal information; (2) loss of benefit of the bargain/opportunity costs; (3) lost time spent dealing with the aftermath of the Data Incident; (4) anxiety or emotional harm; (5) increased "spam" e-mails, texts messages, and phone calls; (6) an increased risk of future harm; and (7) harm from the "delay" in notifying Plaintiffs of the Data Incident. [*See id.* at ¶¶ 9, 55–59, 71–73, 82–86, 89, 99–101, 111–14, 123–25, 134–39, 147, 151–54, 163–69, 178, 180–82, 190–93, 201, 204–07, 209–36, 269.]

Ten named Plaintiffs also allege they suffered the following "specific damages": (1) attempted or actual identity theft or fraud, [*Id.* at ¶¶ 56 (Clarke), 83 (Johnson), 136 (D. Banti), 150 (T. Mangum), 164 & 165 (Spano), 203 (Esquivel)]; (2) out-of-pocket loss, [*id.* at ¶ 110 (Sarabia)]; and/or (3) other damages, such as the inability to access medical records or schedule an appointment via YRMC's "online systems," among others (Martinez), [*id.* at ¶¶ 68, 71], allegations that plaintiffs requested a credit freeze (Johnson and Spano), [*id.* at ¶¶ 85, 168], or allegations that plaintiffs' information is on the "dark web" (Johnson, Sarabia, and the Mangums) [*id.* at ¶¶ 84, 112, 149].

## III.  <u>MOTION TO DISMISS STANDARD</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Quinalty v. FocusIT LLC*, No. CV-23-00207-PHX-JJT, 2024 WL 342454, at *2 (D. Ariz. Jan. 30, 2024) (quoting *Twombly*, 550 U.S. at 555).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

**IV.    ARGUMENT**

    **A.    Plaintiffs Fail to Plausibly Allege the Existence of Damages, a Required Element of Each of Their Claims.**

Initially, YRMC notes that its motion focuses on Plaintiffs' failure to allege cognizable losses on the merits of their claims as opposed to whether they have met the lower threshold to establish Article III standing.  *See Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 614 (9th Cir. 2021).  While A plaintiff *may* have Article III standing based solely on the threat of future harm or a statutory violation, that "does not establish that they [have] adequately pled damages" for purposes of Rule 12(b)(6). *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013); *Krottner v. Starbucks Corp.*, 406 F. App'x 129, 131 (9th Cir. 2010).  Thus, though Plaintiffs may have standing to sue, they have not sufficiently pled damages to survive a challenge under Rule 12(b)(6).  Plaintiffs' claims here should be dismissed for failure to plead damages.

Here, all of Plaintiffs' claims require damages as an element of the claim, *i.e.*, that Plaintiffs plausibly allege they have suffered cognizable loss or damages caused by YRMC's conduct.  *See Durgan v. U-Haul Int'l Inc.*, No. CV-22-01565-PHX-MTL, 2023 WL 7114622, at *1 (D. Ariz. Oct. 27, 2023) ("To state a claim for negligence under Arizona law, 'a plaintiff must prove: (1) a duty requiring the defendant to conform to a certain standard of care; (2) breach of that standard; (3) a causal connection between the breach and the resulting injury; and (4) actual damages.'") (citation omitted);[2] *Griffey I*, 562 F. Supp. 3d at 51 ("a plaintiff must demonstrate that the breach caused an *injury*," *i.e.*, "damages that [are not] speculative," to state a claim for breach of implied contract under Arizona law) (citation omitted); *Feins v. Goldwater Bank NA*, No. CV-22-00932-PHX-JJT, 2022 WL 17552440, at *7 (D. Ariz. Dec. 9, 2022) (unjust enrichment); *Gannon v. Truly Nolen of Am. Inc.*, No. CV 22-428-TUC-JAS, 2023 WL 6536477, at *4 (D. Ariz.

---

[2] Because negligence *per se* is not a standalone cause of action and is instead a doctrine under which Plaintiffs "can establish the duty and breach elements of a negligence claim based on violation of a statute that supplies the relevant duty of care," *Griffey v. Magellan Health Inc.*, 562 F. Supp. 3d 34, 47 (D. Ariz. Sept. 27, 2021) [hereinafter *Griffey I*] (citation omitted), if Plaintiffs fail to establish "actual damages" for their negligence claim, their negligence *per se* likewise must be dismissed.

Aug. 31, 2023) (ACFA claim) (citation omitted).  All of Plaintiffs' allegations of "general" and "specific" damages should be dismissed because they are not cognizable damages for purposes of Rule 12(b)(6).

When assessing damages alleged in data breach actions, courts are increasingly more discerning of plaintiffs' allegations of harm and causation—data breach class actions no longer present novel legal questions of injury, as most Americans have had their information breached.[3]  *See Burger v. Healthcare Mgmt. Solutions, LLC*, Civil Action No. RDB-23-1215, 2024 WL 473735, at *3, *10 (D. Md. Feb. 7, 2024) (dismissing data breach complaint in its entirety even when plaintiffs alleged "more than a dozen unauthorized purchases ha[d] been made with [a] credit card" used by defendant to process payments and when they received phishing e-mail scams from allegedly impacted bank account and spam calls); *Troy v. Am. Bar Ass'n*, 23-CV-03053 (NGG) (VMS), 2024 WL 1886753, at *1, *2, *7 (E.D.N.Y. Apr. 30, 2024) (dismissing complaint outright in data breach class action when plaintiffs alleged they received spam messages and scams, "an unknown third party attempted to fraudulently use Plaintiff Troy's Amazon Business Rewards Visa credit card from Chase Bank to make a purchase of $1,087.65 from Best Buy without her authorization," and Plaintiff Troy purchased credit monitoring); *Petta v. Christie Bus. Holding Co., P.C.*, 230 N.E.3d 162, 167, 170 (Ill. App. Ct. 2023) (dismissing complaint even when plaintiff alleged her SSN had been impacted and her information was used "in connection with a loan application . . . in someone else's name" and she received multiple calls about "loan applications she did not initiate").  This Court should find the same here and reject Plaintiffs' damages and causation allegations.

### 1.    *Plaintiffs' "general damages" allegations fail.*

*First*, Plaintiffs' allegations that they have been harmed because the value of their personal information has diminished following the Data Incident should be dismissed.  In

---

[3] Claudia Dimuro, *61% of Americans Have Had Their Personal Data Breached*, Governing (Feb. 8, 2024), https://www.governing.com/management-and-administration/61-of-americans-have-had-their-personal-data-breached#:~:text=61%25%20of%20Americans%20Have%20Had%20Their%20Personal%20Data%20Breached (last visited May 27, 2024).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

order for this type of harm to constitute a cognizable injury, a plaintiff must clearly establish: (1) a "robust market" exists for the personal information at issue and (2) "plaintiff has been deprived of the ability to sell personal data on the market." *Quinalty*, 2024 WL 342454, at \*5 (citation omitted); *Gannon*, 2023 WL 6536477, at \*3 (same).

Here, Plaintiffs allege in a conclusory fashion that they suffered "damages to and diminution in the value of [their] Private Information" as a result of the Data Incident. [CC, ¶¶ 55, 69, 82, 98, 111, 123, 135, 148, 163, 178, 191, 201.] Plaintiffs further generally allege that personal information is a "valuable commodit[y]" that can be sold on the "black market." [*Id.* at ¶ 213.] This Court has declined to recognize the "dark web" as a "legitimate market by which individuals may sell their information." *Griffey I*, 562 F. Supp. 3d at 46. Plaintiffs' allegations therefore necessarily fail, as they only claim that their private information *may* be sold on illegitimate marks like "dark web" and do not otherwise allege the existence of a market for the *specific type* of personal information at issue here. *Durgan*, 2023 WL 7114622, at \*3. Plaintiffs also do not claim that they "ever ha[ve], intend[] to, or intended to, sell [their] personal data." *Quinalty*, 2024 WL 342454, at \*5. Absent any allegations of a legitimate market where Plaintiffs may sell their personal information, or allegations that they would have sold their information on such a market, combined with allegations that they were somehow deprived of the ability to participate in that market, Plaintiffs' loss of value of their personal information damages theory must be rejected. *See Travis v. Assured Imaging LLC*, No. CV-20-00390-TUC-JCH, 2021 WL 1862446, at \*9 (D. Ariz. May 10, 2021).

***Second***, Plaintiffs' loss of benefit of the bargain/opportunity costs injury allegations likewise fail. Plaintiffs state in conclusory fashion that they have "lost the benefit of their bargain," [CC, ¶ 269], and "lost opportunities" due to the Data Incident, [*id.* at ¶¶ 9, 212]. However, Plaintiffs do not state that they paid YRMC directly for the provision of medical services, nor do they state what amount paid, if any, should have been intended for the provision of data security. [*See id.* at ¶¶ 9, 212, 269.] In fact, they state no allegations of harm at all. Far more detailed allegations have been rejected by this Court as insufficient

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

to constitute viable injury to satisfy even the lower threshold for Article III injury-in-fact. *See Travis*, 2021 WL 1862446, at *10 (rejecting plaintiffs' claim that they "overpaid" for defendant's services and were therefore injured because they "d[id] not explain how the ransomware attack impacted the value of the services they received . . . [n]or d[id] they allege facts establishing that the price they paid for medical services . . . incorporated an amount that they understood to be allocated towards the cost of protecting their personal information"). Plaintiffs' bargain/opportunity costs allegations must therefore be dismissed here.

**Third**, Plaintiffs allege that they have suffered harm based on "lost time" dealing with the Data Incident, including "verifying the legitimacy of the Notice of Data Security Incident" and monitoring their accounts, among other things. [*See* CC, ¶¶ 54, 57, 67, 71, 81, 86, 97, 99, 109, 113, 122, 124, 134, 137, 147, 151, 162, 166, 177, 180, 190, 192, 204, 206.] However, "[t]he majority view is that 'general allegations of lost time' . . . are not cognizable injuries," *Gannon*, 2023 WL 6536477, at *3 (citation omitted), absent any concomitant *reasonably incurred* out-of-pocket expenses, *Pruchnicki v. Envision Healthcare Corp.*, 439 F. Supp. 3d 1226, 1233 (D. Nev. 2020) ("[T]he court finds that tangible, out-of-pocket expenses are required in order for lost time spent monitoring credit to be cognizable as damages."); *Griffey v. Magellan Health Inc.*, No. CV-20-01282-PHX-MTL, 2022 WL 1811165, at *4 (D. Ariz. June 2, 2022) [hereinafter *Griffey II*] (claims for "lost time and the risk of future harm" did not constitute cognizable damages); *accord Griffey I*, 562 F. Supp. 3d at 48. None of the Plaintiffs here alleges he or she has suffered out-of-pocket loss whatsoever except Sarabia. [*Compare* CC, ¶ 110 *with* ¶¶ 54, 57, 67, 71, 81, 86, 97, 99, 109, 113, 122, 124, 134, 137, 147, 151, 162, 166, 177, 180, 190, 192, 204, 206.] Those Plaintiffs' allegations of *only* lost time must therefore be rejected. And even Sarabia's lost time harm allegation fails because, although she alleges lost time and out-of-pocket loss, she does not explain why the out-of-pocket expense in question—the purchase of additional credit monitoring—was reasonable or necessary above and beyond the credit monitoring services previously offered by YRMC. *See, e.g.*, *Gannon*, 2023 WL 6536477,

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

at *3 (rejecting plaintiff' damages "due to out-of-pocket expenses spent on prevention, detection, and recovery; lost opportunity costs; and future costs in time" because she failed to "properly show that the identity monitoring services offered by Defendant were inadequate in some way to justify the out-of-pocket expenses").

**Fourth**, Plaintiffs claim they have suffered "emotional distress associated with the loss of control over their highly sensitive PHI," [CC, ¶ 9], and "anxiety and increased concerns for the loss of [their] privacy," [*id.* at ¶¶ 57, 72, 86, 99, 113, 124, 137, 151, 166, 181, 192, 204]. To plead "emotional distress" or "anxiety" under Arizona law, Plaintiffs must show they "witnessed an injury to a closely related person, suffered mental anguish manifested as physical injury, and w[ere] within the zone of danger so as to be subjected to an unreasonable risk of bodily harm created by the defendant." *Quinalty*, 2024 WL 342454, at *5 (quoting *Rodriguez v. Fox News Network, L.L.C.*, 356 P.3d 322, 325 (Ariz. Ct. App. 2015)). Like in *Quinalty*, Plaintiffs here do not allege any "physical injury, or any risk of bodily harm created by Defendant" because of the Data Incident. *Id.* Their anxiety or emotional harm damages allegations therefore fail. *See also Amari v. Scottsdale Healthcare Hosps.*, No. 1 CA–CV 17–0443, 2018 WL 2928040, at *2–6 (Ariz. Ct. App. June 12, 2018).

**Fifth**, Plaintiffs' allegations that they have suffered increased "spam" [CC, ¶¶ 58, 70, 87, 100, 138, 152, 153, 167, 176, 205], likewise do not constitute cognizable injury, *see, e.g.*, *Jackson v. Loews Hotels, Inc.*, Case No. ED CV 18-827-DMG (JCx), 2019 WL 6721637, at *4 (C.D. Cal. July 24, 2019) (holding that "receiving spam or mass mail does not constitute an injury"); *Travis*, 2021 WL 1862446, at *2, *8 (relying on *Jackson* in part to conclude plaintiffs had not suffered an injury-in-fact when they claimed they experienced "targeted spam" after a data breach). Even assuming receipt of spam calls inquiring about "health insurance information" or "medical equipment [and] devices" among others, constitutes injury (it does not), [CC, ¶¶ 87, 138], such calls are so ubiquitous that they cannot be said to proximately caused by *this* Data Incident without more, *see, e.g.*, *Bass*, 394 F. Supp. 3d at 1036 (noting that "spam e-mails and fake friend requests

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

occur to most, if not all, e-mail and social media users" and therefore "are too common and on their own [cannot] establish causation").

**Sixth**, Plaintiffs allege that they have been injured "arising from the imminent and substantial risk of fraud, identity theft, and misuse resulting from [their] Private Information being placed in the hands of unauthorized third parties[.]" [CC, ¶¶ 59, 73, 89, 101, 114, 125, 139, 154, 169, 182, 193, 207.]  This Court has consistently held that mere risk of future harm does not constitute cognizable injury.  *See Quinalty*, 2024 WL 342454, at *5 (citing *Griffey I*, 562 F. Supp. 3d at 46 (injuries premised on "the danger of future harm are not cognizable injuries")); *Griffey II*, 2022 WL 1811165, at *4 (same). Accordingly, Plaintiffs' future harm allegations alone do not constitute cognizable damages.  And even for those Plaintiffs who claim they have suffered "specific" injuries, such injuries are not plausibly or proximately caused by the Data Incident for additional reasons below.

**Finally**, Plaintiffs' allegations they were harmed by an approximate two-month "delay" in notice of the Data Incident should be rejected.  This Court has already held under analogous circumstances that an approximate one-month "delay" in notice is not "unreasonable." *See Griffey I*, 562 F. Supp. 3d at 56–57. Regardless, allegations of harm based on failure to "timely notify" of a data incident without any "incremental" harm caused by the *delay* and not the Data Incident itself do not constitute injury.  Plaintiffs here do not allege a single fact showing that they were injured at all, much less "incrementally" as a result in the delay in notice of the Data Incident.  *See In re MCG Health Data Sec. Issue Litig*, CASE NO. 2:22-CV-849-RSM-DWC, 2023 WL 3057428, at *5 (W.D. Wash. Mar. 27, 2023) ("Regardless of whether MCG Health failed to timely notify Plaintiffs of the data breach, Plaintiffs have failed to allege how any delay caused Plaintiffs to incur expenses or damaged Plaintiffs . . . the Complaint contains allegations that the intrusion caused by the data breach, not the notification delay, resulted in alleged damage."). Plaintiffs' "general damages" allegations fail and their claims must be dismissed.

### 2.    *Plaintiffs' "specific damages" allegations fail.*

Those Plaintiffs who allege "specific damages" likewise fail to state cognizable harm.  First, all six Plaintiffs who allege attempted or actual identity theft or fraud fail to allege cognizable harm because they do not allege *successful*, unreimbursed identity theft or fraud.  Clarke alleges only that her bank notified her that her debit card may have been "compromised" and asked her whether she was attempting to access her account through an unrecognized device after the Data Incident.  [CC, ¶ 56.]  She does not claim she lost money as a result, and in fact admits that at best she experienced only *thwarted* fraud.  Similarly, D. Banti's and Spano's banks *successfully* alerted them of suspicious activity on their bank cards prior to any theft or loss.  [*Id.* at ¶¶ 136, 164, 165.]  Likewise, Ashby and Esquivel allege only that someone "attempted" to log into their accounts to file a fraudulent tax return and fill out a free FAFSA application, respectively.  [*Id.* at ¶¶ 179, 203.]  D. Banti, Spano, Ashby, nor Esquivel alleges successful fraud or monetary loss as a result of these instances.  [*See id.*]  These allegations all fail to establish cognizable harm under *Griffey II*.  2022 WL 1811165, at *4 (finding plaintiffs who alleged instances of "attempted fraud," both of which were unsuccessful, did not allege cognizable damages under Rule 12(b)(6)).  Similarly, T. Mangum's claim that she received a bill for a February 2022 medical procedure "which she was forced to dispute," [CC, ¶ 150] likewise fails because "[t]he only damages . . . allege[d] as a result of th[is] 'actual misuse' are lost time addressing the attempted fraud and the increased risk of future harm" which are not cognizable damages, *Griffey II*, 2022 WL 1811165, at *4 (allegation that plaintiff "had to replace her ATM card three times and . . . had to stop auto billing from her cellphone and insurance companies" was not cognizable harm because, absent any allegation of out-of-pocket loss as a result, plaintiff "alleges nothing more than lost time monitoring her credit and an increased risk of future harm"); *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1052 (N.D. Cal. 2022) ("targeted *attempts* to commit identity theft" were not cognizable damages because, "[e]ven assuming that the[] acts [wer]e fairly traceable to the Zynga data breach, plaintiffs d[id] not allege that any of the[] attempts succeeded, something they

would presumably know").  Finally, Johnson's claim that her credit score decreased because Charter Communications wrongfully sent a paid bill to collection is not connected to this Data Incident either factually or logically and should be dismissed.

Sarabia's purported "out-of-pocket" loss allegations also fail.  Even if Sarabia had asserted that the additional purchase of credit monitoring was "reasonable and necessary" (she has not and it was not), she fails to explain why the "identity monitoring services offered by [YRMC] were inadequate in some way to justify [her] out-of-pocket expenses." *Griffey I*, 562 F. Supp. 3d at 47.

Finally, Plaintiffs' "other" specific damages allegation should be rejected.  For example, Martinez claims the Data Incident prevented her from making an appointment or accessing her records online for an undisclosed period and Johnson and Spano claim they requested a "credit freeze" to protect their information.  These allegations are akin to the allegations of "lost time" discussed above that this Court has already rejected.  And Martinez's claim that someone called her family members attempting to impersonate her makes no sense—"[z]ero evidence demonstrates that hackers (or their customers) call their victims purporting to be family" or vice versa.  *Bass*, 394 F. Supp. 3d at 1036.  Similarly, Plaintiffs' claims that their personal information was detected on the "dark web" are conclusory and should be rejected.

**B.    Plaintiffs' Negligence Claim Should Also Be Dismissed For Failure to Plead Breach of Duty or Causation.**

Plaintiffs' negligence claim must also be dismissed for failure to plausibly allege YRMC breached any duty to Plaintiffs or that their injuries were caused by said breach.  *See Griffey II*, 2022 WL 1811165, at *3.  The mere fact that a data incident occurred does not mean YRMC breached its duty to safeguard Plaintiffs' information; in fact, a breach can occur even when a defendant has complied with "industry standard" data privacy and security practices.  *See Feins*, 2022 WL 17552440, at *7.  Further, barebones allegations that a defendant has breached "industry standards" or even has violated state or federal statutes, without more, do not show a cognizable breach of duty.  *See Quinalty*, 2024 WL 342454, at *4.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

Even assuming Plaintiffs have pled cognizable damages (they have not), Plaintiffs fail to allege how their damages were plausibly caused by the Data Incident.  First, speculation alone that an injury was caused by a data breach based purely on the fact that the injury occurred *after* the breach happened does not suffice  *See Stollenwerk v. Tri-W. Health Care All.*, 254 F. App'x. 664, 668 (9th Cir. 2007) ("[*P*]*urely* temporal connections are often insufficient to establish causation."); *In re Cmty. Health Sys., Inc.*, No. 15-CV-222-KOB, 2016 WL 4732630, at *25 (N.D. Ala. Sept. 12, 2016) ("The Plaintiffs cannot rest merely upon time and sequence that the alleged fact of misuse occurred after the data breach.").  This is particularly true in the case of E.N.: Plaintiffs do not allege he received a notification letter, and instead merely speculate that he has been injured because his information was allegedly stored on YRMC's network.  This is pure conjecture.

Second, save O'Grady, who alleges no "specific" injuries at all, none of the Plaintiffs allege *exactly* which categories of their Private Information YRMC notified them were impacted in the Data Incident that could plausibly result in the harms they allege.  Therefore, it is unclear how any Plaintiffs can plausibly trace their harms to *this* Data Incident and *their* information allegedly impacted in the Data Incident.  *See, e.g.*, *Antman v. Uber Techs, Inc.*, Case No. 15-cv-01175-LB, 2018 WL 2151231, at *10, *11 (N.D. Cal. May 10, 2018) (concluding plaintiff failed to show information allegedly published on the dark web was the same information impacted in the breach because, although plaintiff claimed that "his [SSN] and other PII ha[d] been made available for sale on the 'dark web' . . . he did not allege that his [SSN] or other PII that an ID thief could use *were disclosed in the data breach*"); *I.C.*, 600 F. Supp. 3d at 1053 (plaintiffs failed to allege "Zynga collected, or that plaintiffs stored in their accounts, their payment or other financial information. It is unclear how a third party could make a credit inquiry, set up a new bank account or access an existing one, apply for a loan, or commit some other fraud without more information, such as first and last names or social security number."); *Burger*, 2024 WL 473735, at *6 (plaintiff's alleged personal injuries "confuse[d] correlation with causation").

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

Finally, to avoid dismissal for lack of causation, a plaintiff must also allege facts sufficient to rule out other causes, which Plaintiffs here fail to do.  *See Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1326–27 (11th Cir. 2012).  For instance, not only is Johnson's claim that her "credit score" decreased unconnected in any plausible way to the Data Incident here, but it is also just as likely (if not more so) that her unpaid bill was sent to collections based on a mistake rather than a hacker's nefarious intent.  Plaintiffs fail to plausibly allege facts linking their injuries to this Data Incident or ruling out causes for their alleged injuries. Their negligence claim must be dismissed.

**C.    Plaintiffs' Negligence *Per Se* Claim Fails.**

Plaintiffs' negligence *per se* claim must be dismissed as a standalone cause of action.  *Griffey I*, 562 F. Supp. 3d at 47 ("Plaintiffs' negligence *per se* claim will be dismissed with prejudice to the extent that it is a stand-alone claim for relief.").  If instead Plaintiffs are only relying on negligence *per se* to satisfy the "duty" element of negligence, this Court has already rejected this same argument.  Specifically, Plaintiffs allege YRMC breached a duty of care under the Health Insurance Portability Act ("HIPAA") and the Federal Trade Commission Act ("FTCA").  [CC, ¶¶ 271, 277, 278, 282, 283.]  This Court has stated that a plaintiff cannot rely on these statues as evidence that a duty was established because "[b]oth acts have their own enforcement mechanisms and were not intended to provide a private right of action."  *Gannon*, 2023 WL 6536477, at *2.  This claim should be dismissed.

**D.    Plaintiffs' Breach of Implied Contract Claim Fails.**

**1.    *Plaintiffs fail to plead the terms of an implied contract.***

Plaintiffs bear the burden of establishing a claim for breach of implied contract based on "offer, acceptance of the offer, consideration, sufficient specification of terms so that the obligations involved can be ascertained, and the parties must have intended to be bound by the agreement."  *Durgan*, 2023 WL 7114622, at *4 (citations omitted).

Here, Plaintiffs aver that an implied contract was formed when they provided their PHI to YRMC to receive "goods and services" and Defendant provided such goods services

"in exchange for payment."  [CC, ¶¶ 289 & 290.]  Plaintiffs further claim that, "through the Privacy Policy, Defendant agreed it would not disclose the PHI it collect[ed] from patients to unauthorized persons [and would] maintain safeguards to protect its patients' PHI," and that Defendant breached the implied contract when hackers accessed YRMC's network containing patient information.  [*Id.* at ¶¶ 31–37, 291.]  However, Plaintiffs do not allege what specifically YRMC promised to do in the event of, or to protect against, a ransomware attack.  And the mere assertion that YRMC was the victim of an attack is not a plausible allegation of the existence and breach of an implied term for "industry standard" data security.  *See Griffey I*, 562 F. Supp. 3d at 51–52 (dismissing breach of implied contract claim, rejecting Plaintiffs' argument that "[b]ecause there was a data breach, Magellan's data security must have been inadequate," and rejecting Plaintiff's argument that "because Magellan did not conform to an unclear standard of data security, Magellan must have breached the implied contracts").

Plaintiffs' contract claim is based merely on an allegation that YRMC was supposed to take some undefined action, based on some undefined implied contractual term, but somehow failed to do so. These vague and conclusory allegations do not constitute "sufficient specification of terms so that the obligations involved can be ascertained." Their breach of implied contract claim should therefore be dismissed.

### 2.    *Plaintiffs also fail to plead consideration.*

Plaintiffs also fail to plead consideration to support an implied contract.  First, Plaintiffs do not allege that they read or relied upon YRMC's Privacy Policy *before* they entered into a relationship with YRMC; therefore, the Privacy Policy "cannot have been part of the Parties' bargained for exchange." *See Durgan*, 2023 WL 7114622, at *4.

Second, Plaintiffs allege that YRMC had pre-existing legal duties to provide the exact same protection under federal and other applicable law. [*See* CC, ¶¶ 271, 278.]  In fact, YRMC's Privacy Policy explicitly states that "[w]e are committed to protecting the

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

1  confidentiality of your medical information, *and are required by law to do so*."[4]  "[S]uch

2  pre-existing obligations do not serve as consideration for a contract."  *Gannon*, 2023 WL

3  6536477, at *3; *In re Banner Health Data Breach Litig.*, No. CV-16-02696-PHX-SRB,

4  2017 WL 6763548, at *4 (D. Ariz. Dec. 20, 2017) (dismissing breach of contract claim

5  when "[n]othing [in the complaint] suggest[ed] a reasonably ascertainable promise to do

6  anything not already required by law" when privacy policy stated "Banner is committed to

7  protecting the confidentiality of information about you, *and is required by law to do*

8  *so* . . .") (emphasis added)  In short, even if YRMC did *generally* promise to protect

9  Plaintiffs' personal information, that promise was nothing more than a promise to fulfill a

10  pre-existing legal duty, which is not consideration to support a legally binding implied

11  contract.

12  **E.    Plaintiffs' Unjust Enrichment Claim Should Be Dismissed.**

13  Under Arizona law, "[u]njust enrichment occurs when one party has and retains

14  money or benefits that in justice and equity belong to another."  *Quinalty*, 2024 WL

15  342454, at *5 (citation omitted).  "To plead an unjust enrichment claim, a party must allege:

16  "(1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and

17  the impoverishment, (4) the absence of justification for the enrichment and the

18  impoverishment, and (5) the absence of a remedy provided at law." *Id.* (citation omitted).

19  Plaintiffs here allege that they "conferred a monetary benefit upon Defendant in the form

20  of monies paid for treatment and services," an unspecified portion of which was allegedly

21  destined for the implementation of "data privacy and security practices and procedures."

22  [CC, ¶¶ 309, 311.]  They claim YRMC was unjustly enriched because it failed to provide

23  adequate data privacy and security practices and retained that portion of Plaintiffs' monies

24  paid that Plaintiffs allege should have been spent on data privacy and security practices.

25  [*Id.* at ¶¶ 310 & 311.]

26

27  _____
[4]      Notice      of      Privacy      Practices,      YRMC,      chrome-
28  extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.yumaregional.org/wp-
content/uploads/2023/12/NoticePrivacyPracticesEnglish-Mobile-App-Language-Added-
122823-FINAL.pdf (last visited May 21, 2024) (emphasis added).

First, Plaintiffs do not allege an enrichment.  To the contrary, Plaintiffs do not state what amount they paid (if they paid anything at all) to YRMC directly, and, in fact, any payment for medical services may have been made through an insurance provider. Accordingly, YRMC could not have been enriched at Plaintiffs' direct expense.  *See Griffey II*, 2022 WL 1811165, at *5 (concluding that (1) plaintiffs who failed to pay Magellan directly and instead made payments to a third-party could not state an unjust enrichment claim as a matter of law and (2) plaintiff who alleged he "paid for health services that Magellan sold," but did not specify to whom, for what, or how much the payment was, likewise failed to state a claim for unjust enrichment for failure to "properly allege[] that Magellan was enriched by his payments").

Second, even assuming Plaintiffs conferred some benefit on YRMC, nowhere in the Complaint do Plaintiffs allege that they were denied *adequate medical services* in any way whatsoever, nor do they allege with specificity why YRMC's data security system was inadequate, which this Court already concluded proved fatal to plaintiffs' unjust enrichment claim in *Griffey I.*  562 F. Supp. 3d at 50; *see also Quinalty*, 2024 WL 342454, at *5 (same).

**F.    Plaintiffs' ACFA Claim Should Be Dismissed.**

**1.    *Plaintiffs' ACFA allegations do not satisfy Rule 9(b).***

Plaintiffs' ACFA claim should also be dismissed for failure to plead it with Federal Rule of Civil Procedure 9(b) particularity.  *See Lorona v. Ariz. Summit Law Sch.*, 188 F. Supp. 3d 927, 935 (D. Ariz. 2016).  Here, Plaintiffs state that their ACFA claim is premised on material omissions.  [CC, ¶ 319.]  "When filing a claim under the [ACFA], a plaintiff in a fraud-by-omission suit faces a slightly more relaxed burden than other types of fraud" and is not required "to articulate the time, place, and specific content of the omission precisely," but nevertheless still must comply with Rule 9(b).  *Gannon*, 2023 WL 6536477, at *4; *Griffey I*, 562 F. Supp. 3d at 54 (same).

Even under the "more relaxed standard," Plaintiffs' ACFA claim is wholly devoid of specificity and fails to satisfy Rule 9.  Plaintiffs allege in boilerplate fashion that YRMC

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

"omitted and concealed material facts . . . namely, Defendant's inadequate privacy and security protections for Plaintiffs' and Class members' PHI," and that YRMC failed to comply with standards outlined under the FTCA and HIPAA.  [CC, ¶¶ 317, 321.] However, Plaintiffs do not explain how these alleged omission were material, the standards under the FTCA and HIPAA Defendant failed to implement, or how any alleged omission contributed to the Data Incident.  In sum, Plaintiffs "fail to adequately articulate the 'how' of the [Data Incident]" or how any alleged "omissions" were material, both of which require dismissal.  *Griffey I*, 562 F. Supp. 3d at 54 ("Plaintiffs' argument that Magellan's data security was inadequate simply because there was a data breach . . . [wa]s conclusory" and warranted dismissal); *Gannon*, 2023 WL 6536477, at *4 (same).

In sum, Plaintiffs' boilerplate allegations—completely untethered from specific averments of *how* the alleged misconduct occurred—do not meet Rule 9(b)'s heightened pleading standard.  Their ACFA claim should therefore be dismissed.

### 2. *Plaintiffs cannot allege actual reliance on any alleged omission to state their ACFA claim.*

The ACFA also requires actual reliance on the alleged unlawful omission.  *Naiman v. Alle Processing Corp.*, No. CV20-0963-PHX-DGC, 2020 WL 6869412, at *7 (D. Ariz. Nov. 23, 2020) ("Actual reliance is an element of an ACFA claim, even if reasonableness of the reliance is not.").  As noted above, Plaintiffs do not state what *specific omissions* they relied upon, much less that they relied upon any omission prior to seeking medical care from YRMC or that such omissions induced them to seek such care.  Plaintiffs state only that they "were ignorant of the truth and relied on the concealed facts and incurred damages as a consequent and proximate result."  [CC, ¶ 322.]  This Court rejected almost identical allegations in *Quinalty* as insufficient to state an ACFA violation.  *See* 2024 WL 34245, at *6.  This Court should dismiss Plaintiffs' ACFA claim on this basis as well.

## V.  <u>CONCLUSION</u>

For the reasons stated above, YRMC respectfully requests that the Court grant this motion and dismiss Plaintiffs' Complaint in its entirety and without leave to amend.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

1    Dated:   May 28, 2024

2                                              Respectfully submitted,

3

4                                              */s/ Sarah A. Ballard*
                                               Paul G. Karlsgodt (admitted *pro hac vice)*
5                                              Sarah A. Ballard (admitted *pro hac vice*)
                                               Keeley O. Cronin (admitted *pro hac vice*)
6                                              **BAKER & HOSTETLER LLP**
                                               1801 California Street, Suite 4400
7                                              Denver, CO 80202

8
                                               Michelle M. Buckley
9                                              **POLSINELLI PC**
                                               One E. Washington St., Ste. 1200
10                                             Phoenix, AZ 85004

11
                                               *Attorneys for Defendant Yuma Regional*
12                                             *Medical Center*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER