Paul G. Karlsgodt (admitted *pro hac vice*)
Sarah A. Ballard (admitted *pro hac vice*)
Keeley O. Cronin (admitted *pro hac vice*)
**BAKER & HOSTETLER LLP**
1801 California Street, Suite 4400
Denver, CO 80202
Phone: 303.861.0600
Fax: 303.861.7805
pkarlsgodt@bakerlaw.com
sballard@bakerlaw.com
kcronin@bakerlaw.com

Michelle M. Buckley (AZ #030617)
**POLSINELLI PC**
One E. Washington St., Ste. 1200
Phoenix, AZ 85004
Phone: 602.650.2000
Fax: 602.264.7033
mmbuckley@polsinelli.com

*Attorneys for Defendant Yuma Regional Medical Center*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dillan Clarke, Elayne Martinez, Brian Kircher, Juanita Sarabia, Megan Kircher, Donald Banti and Marcia Banti, Ryan Mangum and Tiffany Mangum, Anthony Spano, Carol Ashby, Margaret O'Grady, Mayra Esquivel and her minor son, E. N., on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>        v.<br><br>Yuma Regional Medical Center,<br><br>                    Defendant. | Case No. CV-22-01061-PHX-SMB<br><br>**MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT; MEMORANDUM IN SUPPORT OF MOTION**<br><br>**(ORAL ARGUMENT REQUESTED)** |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................. 1

II.   BACKGROUND AND PLAINTIFFS' ALLEGATIONS .................................... 2

III.  MOTION TO DISMISS STANDARD ....................................................... 3

IV.   ARGUMENT .................................................................................... 4

     A.    Plaintiffs' Negligence Claim Must Be Dismissed. ............................ 4

          1.    Plaintiffs fail to demonstrate YRMC breached any duty. ................ 4

          2.    Plaintiffs fail to plead cognizable damages ............................... 6

     B.    Plaintiffs' Breach of Implied Contract/Covenant of Good Faith and Fair

         Dealing Claim Fails........................................................... 12

     C.    Plaintiffs' Unjust Enrichment Claim Should Be Dismissed. .................. 14

     D.    Plaintiffs' Breach of Fiduciary Duty Claim Fails. ........................... 15

     E.    Plaintiffs' ACFA Claim Should Be Dismissed. .............................. 16

V.    CONCLUSION ................................................................................. 18

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

i

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

4

**Cases**

5

*Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*,
F.3d 595 (9th Cir. 2014). .................................................................................. 3

6

7

*In re Ambry Genetics Data Breach Litig.*,
567 F. Supp. 3d 1130 (C.D. Cal. 2021) ........................................................... 16

8

9

*In re Banner Health Data Breach Litig.*,
No. CV-16-02696-PHX-SRB, 2017 WcL 6763548 (D. Ariz. Dec. 20,
2017) ..................................................................................................................... 5

10

11

*Cook v. Orkin Exterminating Co., Inc.*,
258 P.3d 149 (Ariz. Ct. App. 2011) ................................................................. 15

12

13

*Cousin v. Sharp Healthcare, Inc.*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) ........................................................... 16

14

15

*Davis v. Bank of Am. Corp.*,
No. CV 12-01059-PHX-NVW, 2012 WL 3637903 (D. Ariz. Aug. 23,
2012) ................................................................................................................... 15

16

17

*Durgan v. U-Haul Int'l Inc.*,
No. CV-22-01565-PHX-MTL, 2023 WL 7114622 (D. Ariz. Oct. 27,
2023) .......................................................................................................... 4, 13, 17

18

19

*In re Eureka Casino Breach Litig.*,
Case No. 2:23-cv-00276-CDS-BNW, 2024 WL 4253198 (D. Nev. Sept.
19, 2024) ....................................................................................................... 10, 12

20

21

*Feins v. Goldwater Bank NA*,
No. CV-22-00932-PHX-JJT, 2022 WL 17552440 (D. Ariz. Dec. 9,
2022) ....................................................................................................... 4, 6, 14, 15

22

23

*Gannon v. Truly Nolen of Am. Inc.*,
No. CV 22-428-TUC-JAS, 2023 WL 6536477 (D. Ariz. Aug. 31, 2023) ........... *passim*

24

25

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
63 F.4th 747 (9th Cir. 2023) .............................................................................. 3

26

27

*Gonzales v. Palo Verde Mental Health Servs., Inc.*,
783 P.2d 833 (Ariz. Ct. App. 1989) ................................................................. 16

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

*Griffey v. Magellan Health Inc.*,
   562 F. Supp. 3d 34 (D. Ariz. 2021) .................................................................... 4, 13, 17

*Griffey v. Magellan Health Inc.*,
   No. CV-20-01282-PHX-MTL, 2022 WL 1811165 (D. Ariz. June 2,
   2022) ............................................................................................................................. 11, 14

*State ex rel. Horne v. AutoZone, Inc.*,
   275 P.3d 1278 (Ariz. 2012) .................................................................................... 17

*I.C. v. Zynga, Inc.*,
   600 F. Supp. 3d 1034 (N.D. Cal. 2022) ................................................................ 11

*Johnson v. Sisto*,
   No. 2:08–cv–1609 KJM KJN P, 2011 WL 1792273 (E.D. Cal. May 9,
   2011) ............................................................................................................................. 5

*Leonard v. McMenamins Inc.*,
   CASE NO. C22-0094-KKE, 2024 WL 4188974 (W.D. Wash. Sept. 13,
   2024) ............................................................................................................................. 10

*Llewellyn v. AZ Compassionate Care Inc.*,
   No. CV-16-04181-PHX-DGC, 2017 WL 1437632 (D. Ariz. Apr. 24,
   2017) ............................................................................................................................. 12

*Owens v. Smith, Gambrell & Russell Int'l, LLP*,
   Case No. LA CV23-01789 JAK (JDEx), 2024 WL 3914663 (C.D. Cal.
   May 30, 2024) ............................................................................................................. 9

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,
   198 F. Supp. 3d 1183 (D. Or. 2016) ...................................................................... 16

*Quinalty v. FocusIT LLC*,
   No. CV-23-00207-PHX-JJT, 2024 WL 342454 (D. Ariz. Jan. 30, 2024)............ 10, 17

*Quinalty v. FocusIT LLC*,
   No. CV-23-00207-PHX-KML, 2024 WL 5223587 (D. Ariz. Dec. 26,
   2024) ............................................................................................................................. 5, 6

*R.C. v. Walgreen Co.*,
   733 F. Supp. 3d 876 (C.D. Cal. 2024) .................................................................. 7

*Smallman v. MGM Resorts Int'l*,
   638 F. Supp. 3d 1175 (D. Nev. 2022).................................................................... 6

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

*Stanley v. McCarver*,
    92 P.3d 849 (Ariz. 2004)................................................................................. 5

*Travis v. Assured Imaging LLC*,
    No. CV-20-00390-TUC-JCH, 2021 WL 1862446 (D. Ariz. May 10,
    2021) ....................................................................................................... 7, 8

*Ward v. Thompson*,
    630 F. Supp. 3d 1140 (D. Ariz. 2022) ............................................................. 5

*Weinberg v. Advanced Data Processing, Inc.*,
    147 F. Supp. 3d 1359 (S.D. Fla. 2015) ......................................................... 16

*Wichansky v. Zowine*,
    150 F. Supp. 3d 1055 (D. Ariz. 2015) ...................................................... 4, 15

*Williams v. TMC Health*,
    No. CV-23-00434-TUC-SHR, 2024 WL 4364150 (D. Ariz. Sept. 30,
    2024) ...................................................................................... 3, 14, 15, 17

**Statutes**

Ariz. Rev. Stat. § 12-2292 ......................................................................... 4, 5, 15

Ariz. Rev. Stat. § 44-1522 ................................................................................. 17

**Rules**

Fed. R. Civ. P. 12(b)(6) ........................................................................... 1, 3, 11

**Other Authorities**

Anthony Guerra, *Q&A with Yuma Regional Medical Center VP/CISO,
    Blaine Hebert: "Getting the Basics Right Goes a Long Way,"* (May 28,
    2024), https://healthsystemcio.com/2024/05/08/yuma-regional-medical-
    ciso-blaine-hebert/ (last visited Jan. 25, 2025) ........................................... 6

*Notice of Privacy Practices, YRMC*, chrome-
    extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.onvidahealt
    h.org/wp-content/uploads/2023/12/NoticePrivacyPracticesEnglish-
    Mobile-App-Language-Added-122823-FINAL.pdf (last visited Jan. 24,
    2025) ....................................................................................................... 14

*Notice of Privacy Practices, YRMC*, https://www.onvidahealth.org/notice-of-privacy-
    practices/ (last visited Jan. 24, 2025)

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Yuma Regional Medical Center ("YRMC")[1] moves to dismiss Plaintiffs' First Amended Consolidated Class Action Complaint ("FACC") [Dkt. No. 83] for failure to state a claim upon which relief can be granted. Under LRCiv 12.1(c), YRMC certifies that its undersigned counsel notified Plaintiffs' counsel of this motion and Plaintiffs represented to YRMC that they stand on their Amended Complaint as filed.

## I.    **INTRODUCTION**

Plaintiffs have refiled an Amended Complaint purporting to address the deficiencies highlighted by the Court's Order dismissing their complaint in its entirety under Rule 12(b)(6). Their Amended Complaint does not cure those deficiencies and should be dismissed.

Plaintiffs' negligence claim should be dismissed because Plaintiffs do not plausibly allege YRMC *breached* any legal duty owed them. Plaintiffs' citations to physician-patient ethical guidelines and cannons like the Hippocratic Oath, statutes that have already been rejected as establishing private rights of action, and YRMC's own Notice of Privacy Practices ("NOPP") or Privacy Policy (which in fact advise patients a data breach *could* happen) do not establish a legal duty or promise by YRMC to never fall victim to a ransomware attack. This Court has also already rejected the assertion that because the Data Incident occurred, YRMC must have breached a duty to Plaintiffs.

Plaintiffs also do not allege cognizable injuries to state any of their claims. Plaintiffs re-allege the same "general" and "specific" damages theories they pled previously, including theories this Court rejected. They also fail to cure deficiencies in their damages theories, including explaining how their "damages" were justified (such as the purchase of credit monitoring in the face of a free offer for same by YRMC) or that they suffered unreimbursed charges or successful fraud.

Plaintiffs' other claims fail for independent reasons. Their breach of implied

---

[1] As of October 8, 2024, Defendant is now operating under the name "Onvida Health." For purposes of this motion, and for ease of reference, Defendant will continue to refer to itself as "YRMC" in its briefing.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

contract claim fails because Plaintiffs do not plead facts establishing an agreement on the scope of, and parameters for, any obligation to protect Plaintiffs' personal information beyond what YRMC was required to do by law, nor did YRMC ever promise that a breach would not occur. Plaintiffs' new breach of fiduciary duty claim should similarly be dismissed because Plaintiffs do not allege facts establishing the creation of a fiduciary duty on YRMC's part, much less one that YRMC breached. Plaintiffs' unjust enrichment claim fails because they do not allege what, if anything, they paid YRMC directly that would be destined to data security or that they were "impoverished." And finally, Plaintiffs' ACFA claim should be dismissed for failure to show how Plaintiffs would have behaved differently had they been aware that YRMC allegedly omitted material facts underlying its security system or that YRMC's Privacy Policy was "false or misleading."

Ultimately, Plaintiffs again fail to assert a single claim upon which relief can be granted. As such, Plaintiffs' Amended Complaint should be dismissed in its entirety.

## II.    BACKGROUND AND PLAINTIFFS' ALLEGATIONS

Plaintiffs initially commenced this action on behalf of themselves and a putative class of current and former YRMC patients that may have been impacted by the ransomware attack that YRMC discovered on or about April 25, 2022. [*See generally* Dkt. No. 68 ("CC" or "Consolidated Complaint").] After YRMC moved to dismiss Plaintiffs' Consolidated Complaint [Dkt. No. 74], this Court dismissed all claims in the Consolidated Complaint with leave to amend except for Plaintiffs' negligence *per se* claim, which the Court dismissed with prejudice, [Dkt. No. 81 ("Order")]. In its Order, the Court noted that it "[wa]s not abundantly clear to the Court" "how Plaintiffs [could] cure th[e] deficiencies" identified in its Order, but nevertheless permitted leave to amend. [*Id.* at 23.]

On December 13, 2024, Plaintiffs[2] filed an almost-identical Amended Complaint alleging the same facts which are relevant here. [*See* Dkt. No. 84; *see also* Dkt. No. 74 at 2–3.][3] Plaintiffs now assert claims for (1) negligence; (2) breach of implied

---

[2] Plaintiff Brittney Johnson has been removed from the FACC. [*See* Dkt. Nos. 83 & 84.]
[3] Plaintiffs now assert, for the first time, that their Notice Letters informed them their information had been "stolen" during the Data Incident, [*id.* at ¶¶ 49, 60, 72, 81, 91, 103,

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

1    contract/implied duty of good faith and fair dealing; (3) unjust enrichment; (4) breach of

2    fiduciary duty; and (5) violation of the ACFA. [*See generally id.*]

3         In support of their claims, Plaintiffs re-plead the same "general" damages, in

4    addition to "invasion of privacy." [*See* Dkt. No. 74 at 3 (discussing "general" damages

5    theories); *see also* FACC, ¶¶ 11, 51–56, 62–68, 74–77, 83–87, 94–99, 105–11, 117–22,

6    128–35, 141–46, 152–56, 162–67, 169–75, 232.] Nine Plaintiffs also re-allege the same

7    "specific" damages: (1) attempted or actual identity theft or fraud, [*Id.* at ¶¶ 54 (Clarke),

8    108–09 (D. Banti), 150 (T. Mangum), 130–31 (Spano), 143 (Ashby), 163 (Esquivel)]; (2)

9    out-of-pocket loss, [*id.* at ¶ 96 (Sarabia)]; and/or (3) other damages, such as the inability to

10   access medical records or schedule an appointment via YRMC's "online systems," among

11   others (Martinez), [*id.* at ¶¶ 64, 67], allegations that plaintiffs requested a credit freeze

12   (Spano), [*id.* at ¶ 132], or allegations that their information is on the "dark web" (Sarabia

13   and the Mangums) [*id.* at ¶¶ 95, 120].

14   **III.   MOTION TO DISMISS STANDARD**

15        The Court may dismiss a complaint or the claims in it under Rule 12(b)(6) "if the

16   claims lack a cognizable theory or if insufficient facts are alleged to support the theory."

17   *Williams v. TMC Health*, No. CV-23-00434-TUC-SHR, 2024 WL 4364150, at *3 (D. Ariz.

18   Sept. 30, 2024) (citation omitted). "The court does not blindly defer to the 'labels and

19   conclusions' provided by the complaint, . . . nor to any 'naked assertions' devoid of 'further

20   factual enhancement.'" *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747,

21   763 (9th Cir. 2023) (internal citations omitted). Instead, the Court "must demand that a

22   complaint 'contain sufficient factual matter, accepted as true, to 'state a claim to relief that

23   is plausible on its face.'" *Id.* (citations omitted).

24

25   ──────────────

26   115, 126, 139, 150, 160], but do not attach copies of the Notice Letters they received or
     directly quote what their letters said.  By contrast, all Plaintiffs previously alleged only that
     they were informed their information "may have been involved in the Data
     [Incident]." [*See* CC, ¶¶ 52, 65, 79, 95, 107, 120, 132, 145, 160, 174, 188.] Plaintiffs may

27   not amend their pleading to "directly contradict an earlier assertion made in the same

28   proceeding" in order to avoid dismissal. *Airs Aromatics, LLC v. Victoria's Secret Stores
     Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

## IV.    ARGUMENT

### A.    Plaintiffs' Negligence Claim Must Be Dismissed.

The Court previously dismissed Plaintiffs' negligence claim for failure to establish that YRMC "breach[ed] . . . a duty, whatever that duty may have been" and for failure to allege cognizable damages. [Order at 14, 16.] Plaintiffs once again fail to establish that YRMC breached any duty owed to them or that they suffered any cognizable damages sufficient to state a claim.[4]

### 1.    *Plaintiffs fail to demonstrate YRMC breached any duty.*

This Court previously rejected Plaintiffs' "circular," conclusory assertion that "because the breach happened, it must be true [YRMC]'s system [wa]s insecure" and therefore YRMC breached a duty to Plaintiffs. [Order at 16.] It also rejected Plaintiffs' similarly conclusory allegations that YRMC failed to comply with "industry practices" or standards. [*Id.*] Plaintiffs' Amended Complaint does not cure those deficiencies.

Plaintiffs now assert that YRMC had a duty under undefined "common law"; Section 5 of the Federal Trade Commission Act; the Health Insurance Portability and Accountability Act ("HIPAA"); the "Hippocratic Oath," and other physician-patient ethical cannons[5]; a duty under Arizona Revised Statute § 12-2292; and YRMC's "own policies." [*See* FACC, ¶¶ 217–22.] They now claim YRMC breached these duties, citing YRMC's NOPP, a smattering of articles and blogs, and a comment from a podcast in five additional paragraphs in the Amended Complaint. [*See id.* at ¶¶ 30–39.]

First, many of the sources Plaintiffs rely upon to establish YRMC had any duty

---

[4] Plaintiffs' claims all require damages as an element of the claim. *Durgan v. U-Haul Int'l Inc.*, No. CV-22-01565-PHX-MTL, 2023 WL 7114622, at *1 (D. Ariz. Oct. 27, 2023) (negligence); *Griffey v. Magellan Health Inc.*, 562 F. Supp. 3d 34, 51 (D. Ariz. 2021) ["*Griffey I"*] (breach of implied contract) (citation omitted); *Wichansky v. Zowine*, 150 F. Supp. 3d 1055, 1064 (D. Ariz. 2015) (breach of fiduciary duty); *Feins v. Goldwater Bank NA*, No. CV-22-00932-PHX-JJT, 2022 WL 17552440, at *7 (D. Ariz. Dec. 9, 2022) (unjust enrichment); *Gannon v. Truly Nolen of Am. Inc.*, No. CV 22-428-TUC-JAS, 2023 WL 6536477, at *4 (D. Ariz. Aug. 31, 2023) (ACFA claim) (citation omitted). Therefore, if the Court finds Plaintiffs fail to state "damages" sufficient for negligence, their other claims likewise fail.
[5] Plaintiffs also cite the American Medical Association's ("AMA") Principle of Medical Ethics IV and Section 5.05 of the Current Opinions of the Judicial Council of the AMA. [FACC, ¶ 220.]

relate to the physician-patient relationship, not the hospital-patient relationship. For example, the "Hippocratic Oath" is an oath "usually taken by physicians about to enter their professions," *Johnson v. Sisto*, No. 2:08–cv–1609 KJM KJN P, 2011 WL 1792273, at *5 (E.D. Cal. May 9, 2011), and Plaintiffs' cites to principles and opinions under the AMA both pertain to a *physician's* responsibility to its patients. Even if any of these medical ethical cannons and guidelines could be understood to apply hospitals, they do not have the effect and force of rule or law to establish a *legal duty of care* on the part of YRMC. *See Stanley v. McCarver*, 92 P.3d 849, 854 & n.6 (Ariz. 2004).

Second, courts, including in Arizona, have soundly rejected that the FTC Act or HIPAA can give rise to an affirmative duty to protect individuals from data breaches. *See Gannon*, 2023 WL 6536477, at *2 (rejecting as source of duty the FTC Act or HIPAA because "[b]oth acts have their own enforcement mechanisms and were not intended to provide a private right of action") (internal citations omitted); *Quinalty v. FocusIT LLC*, No. CV-23-00207-PHX-KML, 2024 WL 5223587, at *5 (D. Ariz. Dec. 26, 2024) ["*Quinalty II*"] (similar). Arizona courts have also found that Arizona Revised Statute § 12-2292 does not provide for a private right of action. *Ward v. Thompson*, 630 F. Supp. 3d 1140, 1155 (D. Ariz. 2022) (Arizona Revised Statute § 12-2292 "codifies the physician-patient privilege and does not create a private right of action").

Finally, even accepting YRMC had a duty under the above sources (it did not), Plaintiffs still fail to allege facts articulating how YRMC breached such duties. For example, YRMC's NOPP does not promise to protect Plaintiffs' information from data breaches—indeed, the NOPP explicitly acknowledges that a data breach *could* occur, and advises patients it will inform them if a data breach happens.[6] *See, e.g.*, *In re Banner Health*

---

[6] The NOPP Plaintiffs quote is not available at the link cited. [*See* FACC, ¶ 31 n.4.] YRMC references the NOPP available at the following two links: (1) chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.onvidahealth.org/wp-content/uploads/2023/12/NoticePrivacyPracticesEnglish-Mobile-App-Language-Added-122823-FINAL.pdf (stating that "You have the right to be notified in the event that we or one of our Business Associates discovers a breach of unsecured PHI") and (2) https://www.onvidahealth.org/notice-of-privacy-practices/ (stating "We will let you know promptly if a breach occurs that may have compromised the privacy or security of your information") (both last visited on Jan. 24, 2025).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

*Data Breach Litig.*, No. CV-16-02696-PHX-SRB, 2017 WL 6763548, at *4 (D. Ariz. Dec. 20, 2017) (notice of privacy practices did not establish a duty to protect plaintiffs' information from breach, because, *inter alia*, "when referencing the possibility of a data breach, Defendant acknowledge[d] the possibility that some data [could] be unsecured and promise[d] only to notify those affected"); *Quinalty II*, 2024 WL 5223587, at *5 ("[Defendant] itself warned that although it tries to follow industry standards for data security, it 'cannot guarantee [the] absolute security' of PII."). Further, the mere fact that the Data Incident occurred does not mean YRMC breached *any* duty to safeguard Plaintiffs' information. Indeed, this Court has acknowledged that a breach can occur even when a defendant has complied with "industry standard" data privacy and security practices. [*See* Order at 16]; *see also Feins v. Goldwater Bank NA*, No. CV-22-00932-PHX-JJT, 2022 WL 17552440, at *7 (D. Ariz. Dec. 9, 2022).[7] Plaintiffs' "duty" and "breach of duty" allegations fail.

## 2. *Plaintiffs fail to plead cognizable damages.*

The Court rejected all of Plaintiffs' "general" damages' theories. [Order at 3–14.] It also rejected Plaintiffs' "specific" damages allegations. [*Id.* at 10–13.] Plaintiffs' injury allegations, including new allegations like "invasion of privacy," should also be rejected.

**Diminution in the Value of Personal Information.** The Court rejected this theory. Disagreeing with *Smallman v. MGM Resorts Int'l*, 638 F. Supp. 3d 1175, 1190–90 (D. Nev. 2022), the Court found Plaintiffs must establish that a "marketplace" exists where their personal information could be sold and that they were deprived of the ability to sell their

---

[7] Plaintiffs' other "duty" allegations likewise do not establish the creation or breach of any duty. As just one example, Plaintiffs claim that YRMC "did not have adequate cybersecurity employees on staff at the time of the Data [Incident]" based on out-of-context comments from Blaine Herbert in a podcast. [*See* FACC, ¶ 37.] Specifically, Plaintiffs take Mr. Herbert's statement that YRMC has a "pretty small cyber team"—which was in response to the question "You want to start off, Blaine, by telling me about your organization and your role?" as an admission that YRMC was short- or under-staffed. [*Compare* Anthony Guerra, *Q&A with Yuma Regional Medical Center VP/CISO, Blaine Hebert: "Getting the Basics Right Goes a Long Way* (May 28, 2024) https://healthsystemcio.com/2024/05/08/yuma-regional-medical-ciso-blaine-hebert/ with FACC , ¶ 37.] This is grossly misleading and is not what Plaintiffs' cited "sources" actually state.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

1  personal information on that "market" (they failed to do either). [Order at 5–7.] The Court

2  also found that Plaintiffs failed to provide any means to measure or quantify the value of

3  their data. [*Id.* at 6, 7.]

4       In their Amended Complaint, Plaintiffs once again rely on the same or similar

5  allegations, supported by "blog posts" and the like, that a "black market" exists to sell

6  personal information. [FACC, ¶ 171.] Critically, however, their "new" allegations still fail

7  to establish the means to measure the value of *their data* that was allegedly impacted, or

8  that they would have sought or did seek to sell their information on any market whatsoever.

9  [*See Id.* at ¶¶ 170, 181–83 (now alleging that a "complete identity theft kit that includes

10  health insurance credentials may be worth up to $1,000 on the black market" but failing to

11  allege value of *their* information)]; *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 898 (C.D.

12  Cal. 2024) (finding "conclusory allegations concerning the lost economic value of their

13  information, . . . [were]e unsupported by any facts explaining what economic value the

14  information held *to Plaintiffs* and how it was lost through Defendant's dissemination").

15  This "damages" theory should be rejected. *See Travis v. Assured Imaging LLC*, No. CV-

16  20-00390-TUC-JCH, 2021 WL 1862446, at *9 (D. Ariz. May 10, 2021),

17       **Loss of Benefit of the Bargain.** The Court rejected these damages as speculative

18  because Plaintiffs "ma[d]e no specific allegations that they intended for part of the price

19  they paid for services was to be used to provide adequate security." [Order at 7–8.]

20  Plaintiffs now allege they "intended for a portion of the money that they paid [YRMC] for

21  services to be used for implementing and maintaining adequate data security practices,"

22  and that they "lost the benefit of their bargain with" YRMC when it "failed to use this

23  money for adequate data security." [FACC, ¶ 236.]

24       Plaintiffs' allegations are once again conclusory and constitute "backward-looking

25  speculation." [Order at 8.] Plaintiffs do not allege what amount, if any they paid YRMC

26  *directly* for the provision of medical services, nor do they state what amount paid, if any,

27  should have been used for the provision of data security. [*See* FACC, ¶¶ 9, 232, 236.]

28  Instead, Plaintiffs only allege (in nearly identical, cursory fashion) that they received some

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

7

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

version of YRMC's NOPP and/or YRMC's Privacy Policy at some point during their YRMC relationship, and that the parties had a "shared understanding" that a "portion of [whatever] price" Plaintiffs paid for medical services "would be used to provide adequate data security." [*Id.* at ¶¶ 46–47, 57–58, 69–70, 78–79, 88—89, 100–01, 112–13, 123–24, 136–37, 147–48, 157–58.] Plaintiffs do not explain how YRMC's NOPP or Privacy Policy could be reasonably understood to protect their information from any data breach (it does no such thing); how YRMC being victimized in a criminal ransomware attack impacted the *medical services* they received from YRMC; or that they would have chosen not to go to YRMC had they known of its allegedly lax cybersecurity posture.[8] These allegations should be rejected. *See Travis*, 2021 WL 1862446, at *10 (rejecting plaintiffs' injury allegations because they "d[id] not explain how the ransomware attack impacted the value of the services they received . . . [n]or d[id] they allege facts establishing that the price they paid for medical services . . . incorporated an amount that they understood to be allocated towards the cost of protecting their personal information").

**Lost Time and Opportunity Costs.** The Court rejected all allegations of lost time and opportunity costs as cognizable injuries for all Plaintiffs except Sarabia, who was the only Plaintiff who pled accompanying out-of-pocket expenses in the form of credit monitoring. [Order at 8.] The Court nevertheless still rejected Sarabia's allegations as sufficient because she failed "to allege the amount paid, what those services entailed, or any factual basis to infer or evaluate the reasonableness of her purchases in light of the fact that [YRMC]" had provided free credit monitoring. [*Id.* at 9.] Plaintiffs' FACC does not cure these deficiencies. No Plaintiff except Sarabia alleges out-of-pocket loss concomitant with their "lost time" dealing with the Data Incident.[9] [FACC, ¶¶ 52, 63, 75, 84, 94, 106,

---

[8] Indeed, some Plaintiffs continue to be current patients of YRMC even now, almost three years removed from the Data Incident (including one since 1977!). [FACC, ¶¶ 56, 68, 69, 88, 136, 136, 147].

[9] Plaintiffs attempt to push Clarke, D. Banti, and Spano into "out-of-pocket loss" territory by arguing that, after their bank cards were canceled due to an alleged compromise, they were unable to use the funds in their respective accounts for an unspecified number of "days" and therefore "suffered injury from the lost time value of the funds in [their] account." [FACC, ¶¶ 45, 108 131.] Similarly, Ashby claims that she suffered "injury from the lost value of funds" she apparently would have received from her tax return after it was

118, 129, 142, 153, 164.] And Sarabia's "new" allegations likewise do not demonstrate that her purchase of additional credit monitoring above and beyond the free credit monitoring provided by YRMC was a "reasonable reaction" relative to her risk of future harm. *See Owens v. Smith, Gambrell & Russell Int'l, LLP*, Case No. LA CV23-01789 JAK (JDEx), 2024 WL 3914663, at *7 (C.D. Cal. May 30, 2024). Specifically, Sarabia claims she was notified by Credit Karma and her bank, approximately two months after the Data Incident, that her SSN was detected on the dark web, and therefore "upgraded [her] free Credit Karma account with a paid credit monitoring subscription for one year" for approximately $97.50. [*Id.* at ¶¶ 95–96.] However, Sarabia still does not address why the *free* credit monitoring services YRMC offered to all impacted individuals was inadequate to justify the additional purchase of credit monitoring.[10] *See Gannon*, 2023 WL 6536477, at *3 (plaintiff failed to show out-of-pocket expenses spent on "prevention, detection, and recovery" and "lost opportunity costs" were justified because she did not establish the credit monitoring defendant purchased was inadequate). Once again, these injury allegations fail.

**Emotional Distress.** The Court rejected Plaintiffs' "emotional distress" damages because Plaintiffs failed to allege their emotional distress was coupled with "physical injury, illness, or other physical consequence," or that physical harm "develop[ed] as a result" of their emotional distress as required under Arizona law. [Order at 9.] Although Plaintiffs re-allege they have suffered "fear" and "anxiety," none of them alleges *any* physical injury coupled with or as a result fear/anxiety. [*See* FACC, ¶¶ 51, 54, 62, 74, 83, 93, 105, 117, 128, 141, 152, 163, 169.] Accordingly, their "emotional distress" injury allegations should again be rejected. *See Quinalty v. FocusIT LLC*, No. CV-23-00207-PHX-JJT, 2024 WL 342454, at *5 (D. Ariz. Jan. 30, 2024); *In re Eureka Casino Breach*

---

delayed. [*Id.* at ¶ 143.] The inconvenience associated with the inability to access an unspecified amount of funds for an unspecified amount of time does not equate to out-of-pocket loss.

[10] Indeed, given that Sarabia allegedly received her Notice Letter on June 9, 2022, [FACC, ¶ 18], YRMC's credit monitoring offering would have covered the period during which she claims she was alerted her information was on the "dark web."

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

*Litig.*, Case No. 2:23-cv-00276-CDS-BNW, 2024 WL 4253198, at *4 (D. Nev. Sept. 19, 2024) (rejecting "emotional distress" damages allegations under similar Nevada law).

**Increased Spam.** The Court rejected Plaintiffs' "injury" claims based on unsolicited spam communications because, on its own, "receiving spam or mass mail does not constitute and injury." [Order at 10.] It also found that no Plaintiff pleaded allegations of "expenditures reasonably made" to avoid his or her spam communications, including Sarabia, because "[t]here [wa]s no connection between credit monitoring services and how those services avert spam or phishing or what those expenditures entailed." [*Id.*] Plaintiffs once again plead they have received "spam," but do not allege any concomitant out-of-pocket loss reasonably incurred which would remedy the spam communications. [*See* FACC, ¶¶ 55, 66, 86, 98, 121, 134, 155, 166.] They also do not articulate how *their* specific information allegedly impacted in the Data Incident led to increased "spam." *See Leonard v. McMenamins Inc.*, CASE NO. C22-0094-KKE, 2024 WL 4188974, at *8 (W.D. Wash. Sept. 13, 2024). This injury theory therefore fails.

**Increased Risk of Future Harm.** The Court rejected allegations of increased risk of future harm by all Plaintiffs except for Clarke, D. Banti, T. Mangum, Spano, Ashby, and Esquivel because they alleged "attempted or actual identity theft" or that their information was published on the "dark web." [Order at 11, 12 (citation omitted).] The Court nevertheless rejected these Plaintiffs' increased risk of future harm claims because they failed to allege *successful* fraud or that they incurred *unreimbursed* out-of-pocket expenses as a result (Clarke, D. Banti, T. Mangum, Spano, Ashby, Esquivel) or that the attempted fraud impacted Plaintiff's ability to "obtain any student aid she desired" (Esquivel). [*Id.* at 11–14.] The Court also rejected this harm theory premise on the fact that a Plaintiff's information was on the "dark web" (T. Mangum). [*Id.* at 12.]

Plaintiffs' FACC fares no better than the first. For example, Clarke and D. Banti do not claim that they lost money as a result of attempted fraud on their bank accounts; they newly allege only that they were inconvenienced by the inability to access their accounts for "several days." [FACC, ¶¶ 54, 108.] T. Mangum continues to allege her information is

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

on the "dark web" (which the Court deemed insufficient), but has withdrawn her previous allegations concerning the February 2022 "bill" she allegedly disputed (and therefore does not allege any out-pocket loss). [*Id.* at ¶ 120.] Spano re-pleads allegations of thwarted fraud (he claims someone attempted to change his mailing address on his bank accounts and that he experienced attempted fraud on two of his credit cards), but he still does not allege the attempted fraud resulted in unreimbursed charges. [*Id.* at ¶¶ 130–31.] Ashby again claims someone attempted to file a tax return in her name, but does not allege any loss other than an apparent delay in receiving her tax refund, an "injury" the Court previously rejected. [*Id.* at ¶ 143.] Esquivel likewise repleads that someone attempted to log into and use her account for her FAFSA application, but "does not allege that she incurred any expenses due to the attempted log in, nor does she allege it impacted her ability to obtain any student aid she desired." [*Id.* at ¶ 163; Order at 14.] Finally, although not specifically addressed in the "Risk of Fraud" section of the Court's Order, Sarabia's allegations that she is at an increased risk of future harm because she was notified that her personal information was on the "dark web" and that she purchased one year of credit monitoring as a result do not establish she is at an increased risk of future harm. [*Id.* at ¶¶ 95–96, 99.] This Court has rejected allegations of publication on the "dark web" as insufficient and has likewise rejected self-inflicted "harm" in the form of out-of-pocket loss when it is not reasonably justified, as is the case here for reasons explained above.

In sum, no Plaintiff plausibly alleges an increased risk of future harm. This is especially true considering we are three years removed from the Data Incident and no Plaintiff alleges any additional "injuries" than those raised in their Consolidated Complaint. This injury theory should be rejected. *See Griffey v. Magellan Health Inc.*, No. CV-20-01282-PHX-MTL, 2022 WL 1811165, at *4 (D. Ariz. June 2, 2022) ["*Griffey II*"] (allegations of "attempted fraud," both of which were unsuccessful, did not constitute cognizable damages under Rule 12(b)(6)); *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1052 (N.D. Cal. 2022) ("[T]argeted *attempts* to commit identity theft" were not cognizable damages because, "[e]ven assuming that the[] acts [wer]e fairly traceable to the Zynga data

1  breach, plaintiffs d[id] not allege that any of the[] attempts succeeded, something they
2  would presumably know").

3  **Delay in Notice.** The Court rejected that a two-month delay in notice constituted a
4  cognizable injury because Plaintiffs "d[id] not allege any incremental harm caused by the
5  delay and not the breach itself" and failed to show the delay exacerbated any existing harm
6  (because Plaintiffs pleaded none). [Order at 14.] Plaintiffs' undue "delay" allegations are
7  almost identical to those alleged in their Consolidated Complaint. [*Compare* FACC, ¶¶ 3,
8  4 *with* CC ¶ 236.] This Court has already rejected these allegations and should do so again.

9  **Invasion of Privacy.** Plaintiffs now plead for the first time, in true barebones,
10  conclusory fashion, that their privacy has been invaded. [FACC, ¶¶ 11, 169(h).] Beyond
11  simply stating that they have suffered an "invasion of their privacy," Plaintiffs do not
12  provide any detail or explanation to back that allegation. Regardless, courts in the Ninth
13  Circuit considering these claims have rejected damages allegations premised on "violation"
14  or "invasion" or privacy, particularly where, as here, "the plaintiffs do not explain the
15  reasoning behind their violations of privacy claims . . ." *In re Eureka Casino Breach Litig.*,
16  Case No. 2:23-cv-00276-CDS-BNW, 2024 WL 4253198, at *3–4 (D. Nev. Sept. 19, 2024);
17  *Llewellyn v. AZ Compassionate Care Inc.*, No. CV-16-04181-PHX-DGC, 2017 WL
18  1437632, at *6 (D. Ariz. Apr. 24, 2017) (rejecting allegations of "invasion of privacy" as
19  sufficient even before standing purposes). This "damages" theory should be rejected.

20  **B.**    **Plaintiffs' Breach of Implied Contract/Covenant of Good Faith and Fair**
21          **Dealing Claim Fails.**

22  This Court dismissed Plaintiffs' breach of implied contract claim because
23  (1) Plaintiffs did not allege they read and relied upon the terms of YRMC's Privacy Policy
24  before entering into a relationship with YRMC; (2) even if they had, YRMC's Privacy
25  Policy did not "necessarily promise an outcome that a breach would not occur"; and
26  (3) Plaintiffs failed to articulate how YRMC's promises exceeded its pre-existing legal
27  obligations. [Order at 17–18.] Plaintiffs' allegations in the FACC fail to state a claim for
28  breach of implied contract for the same reasons.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

Plaintiffs aver that an implied contract was formed with YRMC when (1) they agreed to provide unquantified "monetary compensation" to YRMC "in exchange for medical services" and were required to provide their personal information to receive such services, [FACC, ¶ 234], and (2) pursuant YRMC's NOPP and/or Privacy Policy, YRMC "expressly promised that it would not disclose the Private Information it collects from patients to unauthorized persons" and would "maintain safeguards to protect its patients' Privacy Information," [*id.* at ¶ 237]. Although Plaintiffs claim that there was a "shared understanding" between the parties that YRMC would "adequately protect[] [Plaintiffs] from foreseeable threats" pursuant to YRMC's NOPP and Privacy Policy [*id.* at ¶ 47], Plaintiffs once again do not claim they *read* the NOPP and Privacy Policy and *specifically relied upon* representations in either of those documents before becoming patients at YRMC. [*See generally id.*] As this Court pointed out, because Plaintiffs did not allege that they *actually read and relied upon* either the NOPP or YRMC's Privacy Policy *before* they entered into a relationship with YRMC, those documents "cannot have been part of the Parties' bargained for exchange." *See Durgan*, 2023 WL 7114622, at *4.[11]

Further, the representations in the NOPP and Privacy Policy are not and cannot be understood as a promise by YRMC that it would never become the victim of a data breach. To the contrary, YRMC expressly acknowledged that a data breach could occur in the terms of its NOPP. [*Supra* at 5 n.6.] Regardless, the fact that YRMC was the victim of a ransomware attack is not a plausible allegation of the existence and breach of an implied term for "industry standard" data security. *See Griffey I*, 562 F. Supp. 3d at 51–52.

Finally, Plaintiffs allege—and this Court acknowledged—that YRMC had *pre-existing* legal duties to provide the exact same protection under federal and other applicable law as it allegedly did under the terms of its "implied contract" with Plaintiffs. [*See, e.g.*, FACC, ¶¶ 176–77, 189–97, 219, 261, 274.] Indeed, YRMC's Privacy Policy explicitly states that "[w]e are committed to protecting the confidentiality of your medical

---

[11] Plaintiffs likewise do not claim that they would have used a different hospital had they known that YRMC may be victimized by a data breach. In fact, multiple Plaintiffs continue to be long-standing patients of YRMC even after the Data Incident.

information, *and are required by law to do so*."[12] "[S]uch pre-existing obligations do not serve as consideration for a contract."[13] *Gannon*, 2023 WL 6536477, at *3; *Feins*, 2022 WL 17552440, *7; *Williams*, 2024 WL 4364150, at *8. This claim fails.

### C.    Plaintiffs' Unjust Enrichment Claim Should Be Dismissed.

The Court dismissed Plaintiffs' unjust enrichment claim because: (1) Plaintiffs failed to allege what amount they paid to YRMC (if at all) would be destined towards data security; (2) their claim was based on the incorrect assumption that "[YRMC] recovers those costs by building them into the provision of medical treatment"; (3) Plaintiffs did not specify who they paid "other than through a vague reference to . . . confer[ing] a monetary benefit upon [YRMC] in the form of monies paid for *treatment* services"; (4) Plaintiffs' assertions required further speculation that YRMC "did not use that money to safeguard their data and retained some benefit"; and (5) Plaintiffs' arguments assumed, in a conclusory fashion, that because a breach occurred, YRMC's information must not have been encrypted or protected Plaintiffs' information properly. [Order at 19–20.] Plaintiffs' allegations in the FACC fail to overcome these deficiencies.

First, Plaintiffs once again do not state what amount they paid YRMC directly (they instead acknowledge that any benefit conferred may have come through a third-party). [*See* FACC, ¶ 252 (acknowledging money may have been paid "on their behalf" for medical service).] They also wrongfully *speculate* that YRMC recovers costs destined towards data security by building them into medical services. [*Id.*] These allegations should be rejected. *See Griffey II*, 2022 WL 1811165, at *5 (concluding that (1) plaintiffs who made payments to third-party—instead of Defendant—could not state an unjust enrichment claim as a matter of law and (2) plaintiff who alleged he "paid for health services that Magellan sold," but did not specify to whom, for what, or how much the payment was, likewise failed to state a claim for unjust enrichment for failure to "properly allege[] that Magellan was

---

[12] *Supra* at 5 n.6.
[13] Plaintiffs' "claim" of breach of the implied covenant of good faith and fair dealing similarly requires dismissal because it does not create "new" contract terms, it instead "ensure that parties do not frustrate already-existing contract terms." *Gannon*, 2023 WL 6536477, at *4.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

enriched by his payments").

Second, Plaintiffs' argument assumes, without support, that YRMC did not in fact *use* any monies paid to it directly for data security because it was the victim of the Data Incident. In what is a common theme throughout their FACC, Plaintiffs urge the Court to assume that, because YRMC was the victim of a data breach, YRMC must not have used Plaintiffs' monies (if any were paid by Plaintiffs to YRMC) for the provision of adequate data security. The Court has already rightfully rejected this argument and should do so again. *See Feins*, 2022 WL 17552440, at *7.

Finally, Plaintiffs' unjust enrichment claim fails for reasons articulated in YRMC's original motion to dismiss briefing and because, among other reasons, Plaintiffs fail to plead an "impoverishment." *Williams*, 2024 WL 4364150, at *9.

### D.    Plaintiffs' Breach of Fiduciary Duty Claim Fails.

Plaintiffs state a new claim for breach of fiduciary duty in their FACC. [FACC, ¶¶ 258–64.] Under Arizona law, a "fiduciary relationship is a confidential relationship involving great intimacy, disclosure of secrets, or 'peculiar reliance in the trustworthiness of another.'" *Davis v. Bank of Am. Corp.*, No. CV 12-01059-PHX-NVW, 2012 WL 3637903, at *6 (D. Ariz. Aug. 23, 2012) (citation omitted). "[M]ere trust in another's competence or integrity does not suffice to create a fiduciary relationship," nor is a fiduciary relationship created simply through "general commercial transactions[.]" *Cook v. Orkin Exterminating Co., Inc.*, 258 P.3d 149, 152 (Ariz. Ct. App. 2011) (citations and internal punctuation marks omitted). Plaintiffs must establish they suffered damages to state a claim for breach of fiduciary duty. *Wichansky*, 150 F. Supp. 3d at 1064.

Here, Plaintiffs allege for the first time that YRMC had a "fiduciary duty" to Plaintiffs pursuant to the same physician-patient ethical medical cannons and guidelines discussed previously, as well as HIPAA and Arizona Revised Statute § 12-2292. [FACC, ¶¶ 259–64.] They claim YRMC breached these fiduciary duties by "not implementing and maintaining adequate data security measures." [*Id*. at ¶ 263.] As an initial matter, Plaintiffs' reliance on physician-patient rules to establish a fiduciary duty on the part of YRMC, a

hospital, is misplaced. *See Gonzales v. Palo Verde Mental Health Servs., Inc.*, 783 P.2d 833, 835 (Ariz. Ct. App. 1989) (rejecting contention that hospital owed plaintiff a fiduciary duty based on logic that "because a doctor owes a patient a fiduciary duty and because a hospital is subject to the same standard of care in a malpractice action as a doctor, . . . the hospital, therefore, owes a patient a fiduciary duty"); *Cousin v. Sharp Healthcare, Inc.*, 681 F. Supp. 3d 1117, 1124 (S.D. Cal. 2023) (breach of fiduciary duty not automatically created between healthcare provider and patients because "the relationship of hospital and patient is not per se a fiduciary or confidential one"). Further, Plaintiffs do not allege cognizable damages for the reasons stated herein.

Plaintiffs' other, similarly conclusory allegations for the alleged creation of a fiduciary relationship have likewise been uniformly rejected in jurisdictions across the country and should also be rejected here. *See Weinberg v. Advanced Data Processing, Inc.*, 147 F. Supp. 3d 1359, 1367 (S.D. Fla. 2015) ("[T]he mere receipt of confidential information is insufficient by itself to transform an arm's-length transaction into a fiduciary relationship"); *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1145–46 (C.D. Cal. 2021) (concluding plaintiffs failed to establish fiduciary relationship based on the "collect[ion] [of] Plaintiffs' private information so Defendants could provide their genetic testing to screen for and diagnose diseases"); *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 198 F. Supp. 3d 1183, 1202–3 (D. Or. 2016) (similar). This cause of action should be dismissed.

### E.    Plaintiffs' ACFA Claim Should Be Dismissed.

The Court previously dismissed Plaintiffs' ACFA claim because they failed to show how they would have behaved differently had they been aware that YRMC allegedly omitted material facts underlying its security system that would have prompted Plaintiffs to behave differently). [Order at 22.] They also failed to show that YRMC's Privacy Policy was "false or misleading." [*Id.*] Plaintiffs' ACFA claim should be dismissed for the same reasons articulated in YRMC's first motion to dismiss and because Plaintiffs have not remedied the deficiencies the Court noted in its Order.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

First, Plaintiffs once again fail to allege they *actually read* the NOPP or Privacy Policy before entering into a relationship with YRMC, the lack of which killed their initial ACFA claim. Although Plaintiffs now assert the NOPP was, "[u]pon information and belief," provided to them at the time they received medical services, [*id.* at ¶ 31], they again fail to allege they *read the terms of the NOPP* and relied upon those terms when seeking medical services, *see Williams*, 2024 WL 4364150, at *6 (finding that plaintiffs "fail[ed] to allege how [defendant's] Website's failure to disclose its use of tracking technologies impacted Plaintiffs' decision to seek Defendant's healthcare services after using the Website. In other words, Plaintiffs fail to show any relationship between this omission and Defendant's sale of healthcare services to Plaintiffs"). Plaintiffs now quote YRMC's Privacy Policy, but again do not claim they read it before they entered into a relationship with YRMC. [FACC, ¶ 32.] Plaintiffs also re-allege that they "were ignorant of the truth and relied on the concealed facts and incurred damages as a consequent and proximate result." [*Id.* at ¶ 275]. Almost identical allegations in *Quinalty* as insufficient to state an ACFA violation. *See* 2024 WL 34245, at *6.

Second, Plaintiffs do not show how YRMC's Privacy Policy and NOPP—even if read and relied upon—were false or misleading, much less that YRMC intended for Plaintiffs to rely upon any material omissions therein. *See State ex rel. Horne v. AutoZone, Inc.*, 275 P.3d 1278, 1281 (Ariz. 2012) (stating that a claim under the ACFA's omission clause "requires proof that the omission is material and made with intent that a consumer rely thereon") (quoting Ariz. Rev. Stat. § 44-1522(A)). YRMC acknowledged in its NOPP that a data breach *could* occur and only promised to notify its patients if one did—exactly what YRMC did here. Plaintiffs' failure to allege any false promise, misrepresentation, or omission is fatal to their ACFA claim. *See Durgan*, 2023 WL 7114622, at *5; *Griffey I*, 562 F. Supp. 3d at 54; *Gannon*, 2023 WL 6536477, at *4. In short, Plaintiffs' same boilerplate fail to state a claim for violation of the ACFA and their claim should therefore be dismissed.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

17

1

## V.    <u>CONCLUSION</u>

2

3

For the reasons stated above, YRMC respectfully requests that the Court grant this motion and dismiss Plaintiffs' Amended Complaint without leave to amend.

4

Dated:   January 24, 2025

5

Respectfully submitted,

6

7

<u>/s/ Sarah A. Ballard</u>

8

Paul G. Karlsgodt (admitted *pro hac vice*)
Sarah A. Ballard (admitted *pro hac vice*)

9

Keeley O. Cronin (admitted *pro hac vice*)

10

**BAKER & HOSTETLER LLP**
1801 California Street, Suite 4400

11

Denver, CO 80202

12

13

Michelle M. Buckley
**POLSINELLI PC**

14

One E. Washington St., Ste. 1200
Phoenix, AZ 85004

15

16

*Attorneys for Defendant Yuma Regional Medical Center*

17

18

19

20

21

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER